UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| WADE ROBERT HOOVER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:13-cr-00018-JAW |
| | ) | 1:15-cv-00395-JAW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

## RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

In this action, Petitioner Wade Robert Hoover moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence. (Motion, ECF No. 65; Attachments, ECF Nos. 65-1 to 65-12.) Following a guilty plea, Petitioner was convicted of sexual exploitation of two minors to create a visual depiction of the conduct, and possession of child pornography. (Judgment, ECF No. 38 at 1.) The Court sentenced Petitioner to 480 months in prison. (*Id.* at 2.) Petitioner appealed from the sentence, and the First Circuit affirmed. *United States v. Hoover*, No. 13-1886 (1st Cir. June 25, 2014). The Supreme Court denied Petitioner's petition for a writ of certiorari. *Hoover v. United States*, 135 S. Ct. 299 (2014).

Petitioner asserts the following grounds, each of which appears to include a related allegation of ineffective assistance of counsel: (1) federal jurisdiction is lacking; (2) Petitioner's initial detention on state charges violated his federal statutory and constitutional pre-trial rights; (3) the Government pursued the charges knowing they were based on false information; (4) Petitioner did not knowingly and intelligently waive indictment or plead guilty; (5) the sentence was based on an unreasonable determination of the facts; (6) the sentencing judge was biased against Petitioner because the victims were male children; (7) the Court erred in finding that a

victim of the possession crime met the causation requirement for a grant of restitution; and (8) the cumulative errors violated due process and resulted in a fundamental miscarriage of justice.

The Government filed a response, through which response the Government moved for summary dismissal. (Response, ECF No. 85 at 1.) Petitioner subsequently filed a reply in opposition to the request for dismissal. (Reply, ECF No. 91 at 1.)

Following a review of Petitioner's motion and reply, the Government's request for dismissal, and the record, I recommend the Court grant the Government's request, and dismiss Petitioner's motion.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following is a summary of the Government's version of the offense, which version Petitioner told the Court at his plea hearing was true to the best of his knowledge. (Prosecution Version, ECF No. 23; Transcript of Initial Appearance, Waiver of Indictment, Arraignment, and Guilty Plea ("Plea Tr."), ECF No. 47 at 19.)

Law enforcement, while monitoring a peer-to-peer network in August and September 2012, identified known child pornography videos associated with a computer at an internet protocol address that law enforcement tracked to Petitioner's then employer, an organization with an office in Augusta, Maine. (Prosecution Version at 1.) Law enforcement visited the location on October 3, 2012. (*Id.*) A personal laptop computer in Petitioner's office had an assigned internal internet protocol address that matched the one identified by law enforcement. (*Id.*) Petitioner was excused from a meeting, and, after law enforcement explained to him that he was not under arrest and not obligated to answer questions, Petitioner admitted that he had logged onto a peer-to-peer network and downloaded child pornography to his personal laptop computer while at work. (*Id.* at 1-2.)

Petitioner consented to a preview of his laptop computer; officers used a mobile forensic laboratory at the scene, and they found twelve still images and one video depicting a young boy's genitals and a man sexually abusing the boy. (*Id.* at 2.) The officers spoke again with Petitioner; the interview and a subsequent investigation revealed that Petitioner had sexually abused a male minor in April 2012. (*Id.*) Petitioner photographed the abuse with an Olympus digital camera and stored the pictures on a laptop hard drive. (*Id.*) Two external hard drives also seized from Petitioner on October 3, 2012, and searched pursuant to warrants, contained images and movies, which Petitioner made, that depicted him sexually abusing a different male minor on various occasions from 2008 to 2011. (*Id.* at 2-3.)

The computer and external hard drives also contained other images, not made by Petitioner, that depicted minors engaged in sexually explicit conduct. (*Id.* at 3.) The images included videos that law enforcement had identified through the peer-to-peer network monitoring conducted in August and September 2012. The camera, computer, and external hard drives were manufactured outside Maine. (*Id.*)

According to the presentence investigation report, which Petitioner told the Court at sentencing was accurate, the State of Maine arrested Petitioner on October 3, 2012, and charged him in Kennebec County with possession of sexually explicit material depicting a minor, and the State charged him on April 2, 2013, in Somerset County with gross sexual assault. (Sentencing Tr., ECF No. 48 at 3-4.)

On October 5, 2012, law enforcement filed a one-count criminal complaint in this Court, charging Petitioner with sexual exploitation, pursuant to 18 U.S.C. § 2251(a), (c). (Complaint, ECF Nos. 1, 7 (redacted version) at 1.) According to the presentence investigation report, the State dismissed the charge of possession of sexually explicit material on December 7, 2012, in lieu of

the federal prosecution.  On December 10, 2012, Petitioner waived a preliminary hearing on the federal charge, and the Court ordered Petitioner detained pending trial.  (Waiver, ECF No. 14; Order, ECF No. 15.)

On February 5, 2013, Petitioner was charged, by a two-count information, with sexual exploitation of two minor children, 18 U.S.C. § 2251(a), (e), and with possession of child pornography, 18 U.S.C. § 2252A(a)(5)(B).  (Information, ECF No. 19.)  At a hearing in February 2013, Petitioner waived indictment, and, following a plea hearing conducted pursuant to Fed. R. Crim. P. 11, he pled guilty to both counts.  (Plea Tr. at 9, 24.)

At the sentencing hearing, held in July 2013, the Court made the following sentencing guidelines calculations:  As to one of the victims (Male Minor Child "A"), the base offense level was 32, pursuant to U.S.S.G. § 2G2.1(a), to which level the following were added: four levels because the victim was younger than twelve years, pursuant to U.S.S.G. § 2G2.1(b)(1)(A); two levels because Petitioner subjected the victim to anal sex, pursuant to U.S.S.G. § 2G2.1(b)(2)(A); four levels because Petitioner produced videos in which he anally penetrated the victim with his penis, pursuant to U.S.S.G. § 2G2.1(b)(4); and two levels because the minor victim spent the night at Petitioner's house and elsewhere and was in his care and custody, pursuant to U.S.S.G. § 2G2.1(b)(5).  (Sentencing Tr. at 38-39.)  The resulting adjusted offense level was 44.  (*Id.* at 39.)

As to the other victim (Male Minor Child "B"), the calculations were the same, but the four-level enhancement for the victim, pursuant to U.S.S.G. § 2G2.1(b)(4), was based on the Court's finding that Petitioner penetrated the victim anally with Petitioner's penis and fingers, and with two unidentified objects.  (*Id.*)  The resulting adjusted offense level was 44.  (*Id.* at 39.)

As to the possession of child pornography count, the base offense level was 18, pursuant to U.S.S.G. § 2G2.2(a)(1), to which level the following were added:  two levels because the victims

were prepubescent minors, pursuant to U.S.S.G. § 2G2.2(b)(2); two levels because Petitioner distributed the pornography, pursuant to U.S.S.G. § 2G2.2(b)(3)(F); four levels because Petitioner possessed images of child pornography that portrayed sadistic or masochistic conduct, or other depictions of violence, pursuant to U.S.S.G. § 2G2.2(b)(4); five levels because Petitioner engaged in a pattern of activity involving sexual abuse or exploitation of a minor, pursuant to U.S.S.G. § 2G2.2(b)(5); two levels because Petitioner used a computer, pursuant to U.S.S.G. § 2G2.2(b)(6); and five levels because Petitioner possessed 600 or more images, pursuant to U.S.S.G. § 2G2.2(b)(7). (*Id.* at 40.) The resulting adjusted offense level was 38. (*Id.*)

The Court determined that the multiple count adjustment raised the offense level by three to 47, pursuant to U.S.S.G. § 3D1.4, and the Court raised the level by five to 52, pursuant to U.S.S.G. § 4B1.5(b)(1). (*Id.* at 40-41.) The Court reduced the offense level by three to 49 because Petitioner accepted responsibility, pursuant to U.S.S.G. § 3E1.1. (*Id.* at 41.) The Court then concluded that the total offense level was 43 rather than 49, because 43 is the highest offense level recognized in the sentencing guidelines table. (*Id.*)

The Court determined that Petitioner's criminal history placed him in Category I, which, combined with a total offense level of 43, yielded an applicable sentencing guidelines range of life. (*Id.*) The Court concluded that the statutory maximum applied because it was less than the guidelines range, and, therefore, the guidelines range was determined to be 480 months of incarceration. (*Id.*) The guidelines range for supervised release was five years to life. (*Id.*) The Court noted Petitioner's objections to the presentence investigation report; Petitioner objected to the four-level increase for sadistic behavior, and to the cross-reference set forth in U.S.S.G. § 2G2.2(c).[1] (*Id.* at 41-42; Petitioner's Sentencing Memorandum, ECF No. 29 at 4-8.)

---

[1] Petitioner's "cross-reference" objection refers to the presentence investigation report's application of U.S.S.G. § 2G2.2(c)(1), which cross-references U.S.S.G. § 2G2.1 for the offense level on the possession offense.

The Court then considered the sentencing factors, particularly the history and characteristics of Petitioner, the nature and circumstances of the offense, and the need to protect the public, pursuant to 18 U.S.C. § 3553(a). (Sentencing Tr. at 42.) Ultimately, the Court sentenced Petitioner to 360 months on Count 1 and to 120 months on Count 2, to be served consecutively, for a total term of 480 months of imprisonment. (*Id.* at 51.) The Court imposed a life term of supervised release. (*Id.*)

Petitioner appealed from the sentence on grounds that it was unreasonable and an abuse of discretion. (Petitioner's Appellate Brief at 5.) The First Circuit concluded that the Court's "sentencing determination was procedurally and substantively sound and that the district court did not abuse its discretion." *Hoover*, No. 13-1886 (1st Cir. June 25, 2014).

In July 2014, Petitioner moved to dismiss the waiver of indictment. (Motion, ECF No. 53.) The Court dismissed the motion without prejudice. (Order, ECF No. 58.)

The Supreme Court denied certiorari on October 6, 2014. *Hoover*, 135 S. Ct. 299. The section 2255 motion was filed timely on September 29, 2015.[2]

## II. DISCUSSION

### A. Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that

---

(Petitioner's Sentencing Memorandum, ECF No. 29 at 6-8.) At sentencing, the Court noted that the issue had been resolved in accordance with Petitioner's objection. (Sentencing Tr., ECF No. 48 at 4-5.) Thus, the Court applied a base offense level of 18 on the possession offense, in accordance with section 2G2.2(a)(1), rather than a base offense level of 32, pursuant to section 2G2.1(a), as the presentence investigation report had provided. Petitioner did not object to a three-level increase for the combined offense level, pursuant to U.S.S.G. § 3D1.4. (Petitioner's Sentencing Memorandum at 8.) Petitioner's sentencing memorandum acknowledged that even if he prevailed on his guidelines objections, the total offense level would still be above the guidelines maximum level of 43. (*Id.* at 1.)

[2] *See* 28 U.S.C. 2255(f) (providing in pertinent part that "[a] 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of – (1) the date on which the judgment of conviction becomes final.")

the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "[I]ssues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (quotation marks omitted).

"[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127-28. Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte.*" *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default, but only if the petitioner demonstrates both that counsel's representation fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced the petitioner's defense. *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)); *Owens v. United States*, 483 F.3d 48, 63 (1st Cir. 2007). That counsel's strategy may have proven unsuccessful does not in itself render counsel's performance deficient. *Strickland*, 466 U.S. at 699. A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the test because a failure to meet either prong will undermine the claim. *Strickland*, 466 U.S. at 697. If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)). In determining whether an evidentiary hearing is required, the court must "take as true the sworn allegations of fact set forth in the petition 'unless those allegations are merely conclusory, contradicted by the record, or inherently incredible.'" *Owens*, 483 F.3d at 57 (quoting *Ellis v. United States*, 313 F.3d 636, 641 (1st Cir. 2002)). Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495

(1962)).  The Court can reasonably require a petitioner to supply the Court with salient details of the claim prior to permitting discovery or a hearing.  *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

### B.  Claims and Analysis

#### 1.  Claim that jurisdiction is lacking as to Count 1

Petitioner argues that because the Government did not prove that he sent across state lines the pornographic material he produced, the Government failed to prove the jurisdictional element of interstate commerce set forth in 18 U.S.C. § 2251(a).  (Attachments, ECF Nos. 65-1 at 3-4; 65-8.)  Petitioner includes a related claim of ineffective assistance of counsel.  (Attachments, ECF Nos. 65-1 at 3-4; 65-5 at 1.)  Petitioner maintains that the mere fact that the equipment used to produce child pornography was manufactured outside Maine is insufficient to meet the element of interstate commerce.  (Attachment, ECF No. 65-8.)

First, the argument is procedurally defaulted because Petitioner did not assert it at trial or on appeal.[3]  *See Frady*, 456 U.S. at 165; *Berthoff*, 308 F.3d at 127.

In addition, had the claim not been procedurally defaulted, Petitioner would not have succeeded.  Section 2251(a) applies if the pornographic material was produced using materials that have traveled in interstate commerce.  18 U.S.C. § 2251(a).[4]  "The term 'jurisdictional element'

---

[3] Petitioner raised the issue in his post-conviction motion.  (Motion, ECF No. 53 at 1.)

[4] Title 18 U.S.C. § 2251(a) provides:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual

refs to a statutory provision that limits (or, more commonly, justifies) the reach of a federal statute by linking the offense to conduct that involves 'at least some explicit connection with or effect on interstate commerce.'" *United States v. Burdulis*, 753 F.3d 255, 261 (1st Cir. 2014) (discussing 18 U.S.C. § 2252(a)(4)(B) and holding that, as a matter of law, pornographic images were produced when they were copied onto a thumb drive, and that such a device, made in China, satisfied the jurisdictional requirement).[5]

Petitioner does not contest that the computer, camera, and external hard drives involved in Count 1, the production offenses, were all manufactured outside Maine.[6] (Prosecution Version at 2-3; Plea Tr. at 19.) On that basis, Petitioner's jurisdictional argument that he should not have been found guilty lacks merit. *See Burdulis*, 753 F.3d at 261-62. Because the underlying argument lacks merit, the ineffective assistance claim also fails. *See Tse*, 290 F.3d at 465.

---

depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

[5] Title 18 U.S.C. § 2252(a)(4)(B) criminalizes possession; it is not the statute of conviction on Count 1 in this case, but because the interstate commerce jurisdictional element in section 2252(a)(4)(B) is similar to Petitioner's statute of conviction on Count 1, and because the First Circuit discussed section 2252(a)(4)(B) in *United States v. Burdulis*, 753 F.3d 255, 261 (1st Cir. 2014), the statute is quoted here. Section 2252(a)(4)(B) provides that any person who either

knowingly possesses, or knowingly accesses with intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if—

**(i)** the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

**(ii)** such visual depiction is of such conduct;

shall be punished as provided in subsection (b) of this section.

*See United States v. Looney*, 606 F. App'x 744, 746 (5th Cir. 2015) (per curiam) (unpublished) (discussing both 18 U.S.C. §§ 2252(a)(4)(B) and 2251(a), and noting that "[t]he jurisdictional hook in both statutes requires the Government to establish that the pornography was produced using materials that had been in interstate commerce").

[6] Count 1 is referred to variously in this recommended decision as the production offense(s) or the sexual exploitation offense(s), i.e., the conviction pursuant to 18 U.S.C. § 2251.

### 2. Claim regarding pre-trial detention

Petitioner contends his due process rights were violated during the federal pre-trial process. (Attachments, ECF Nos. 65-1 at 3; 65-6; 65-9.) Petitioner argues specifically that a federal detainer impeded his ability to make bail on state charges, and he was denied his right to a speedy and public trial on the federal charges. (Attachments, ECF Nos. 65-1 at 2; 65-6.) Petitioner alleges that the state charges were brought as a sham prosecution to hold Petitioner pending initiation of the federal charges. (Attachment, ECF No. 65-6.)

Petitioner's claim is procedurally defaulted, and it fails on the merits because Petitioner pled guilty unconditionally.

> We have previously held that, by waiving the right to a trial through a guilty plea, the defendant waives all nonjurisdictional defenses. We now join with our sister circuits and hold that a claim under the Speedy Trial Act is a nonjurisdictional defense that is waived with an unconditional guilty plea.

*United States v. Gonzalez-Arimont*, 268 F.3d 8, 12 (1st Cir. 2001) (citations omitted); *United States v. Kirksey*, 118 F.3d 1113 (6th Cir. 1997) (noting that the Court had previously held that a defendant's "failure to enter [a] conditional guilty plea prevented him from raising on appeal Speedy Trial Act and due process challenges to his conviction").

Furthermore, the Court found (1) that Petitioner consented to being detained pending trial; (2) that he voluntarily, knowingly, and intelligently waived his right to a detention hearing; and (3) that the Court accepted the waiver.[7] (Motion, ECF No. 9; Order, ECF No. 15.) Had Petitioner

---

[7] Any double jeopardy argument Petitioner intends to assert based on the state court proceedings also lacks merit.

> [P]rosecutions undertaken by separate sovereign governments, no matter how similar they may be in character, do not raise the specter of double jeopardy as that constitutional doctrine is commonly understood. This rule derives from the tenet that when "a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offenses' and can be prosecuted and punished for both.

*United States v. Guzman*, 85 F.3d 823, 826 (1st Cir. 1996) (citations omitted) (quoting *Heath v. Alabama*, 474 U.S. 82, 88 (1985)). Although the First Circuit noted that an exception exists under *Bartkus v. Illinois*, 359 U.S. 121,

not waived his right to a detention hearing, he would have been subject to 18 U.S.C. § 3142(e)(3)(E), which sets forth a rebuttable presumption in favor of detention if a judicial officer finds that there is probable cause that the person committed an offense involving a minor under 18 U.S.C. § 2251.

Because the underlying arguments lack merit, any related ineffective assistance claim also fails. *See Tse*, 290 F.3d at 465.

### 3. Claim of prosecutorial misconduct in the investigation

Petitioner alleges that the lead investigator, a special agent with the United States Immigration and Customs Enforcement Homeland Security Investigations, made false statements and manipulated the investigation. (Attachment, ECF No. 65-7.) Petitioner apparently makes four specific factual allegations, all of which appear to relate to the affidavit the agent filed in support of the criminal complaint.[8] (*Id.*; Complaint.)

---

131-33 (1959), the First Circuit noted that the exception is "limited to situations in which one sovereign so thoroughly dominates or manipulates the prosecutorial machinery of another that the latter retains little or no volition in its own proceedings." *Id.* at 827.

The Law Court found that "the record shows that the State's decision to immediately arrest Hoover was motivated not by a desire to act as a tool for federal prosecutors, but by public safety concerns." *State v. Hoover*, 2015 ME 109, ¶ 18, 121 A.3d 1281. Although the Law Court's decision was based on an interlocutory appeal, *id.* ¶ 10 n.1, in a case that is not pending before this Court, a review of the section 2255 record reveals nothing that supports Petitioner's allegation that the federal investigation dominated the State to the extent that it deprived the State of prosecutorial choices.

[8] Petitioner also alleges some additional facts that he asserts are from "Report 1," "Report 2," and "Report 7." (Attachment, ECF No. 65-7 at 1-2.) It is not clear to which reports Petitioner refers, and the reports may or may not be part of the record. Petitioner alleges that one of the reports falsely states that Petitioner told law enforcement he was aroused by fondling one of the victims, when, Petitioner alleges, he stated that he never fondled that victim. (*Id.* at 1.) The prosecution version, which Petitioner admitted was true to his personal knowledge, states that Petitioner sexually abused the same victim. (Prosecution Version, ECF No. 23 at 2; Transcript of Initial Appearance, Waiver of Indictment, Arraignment, and Guilty Plea ("Plea Tr."), ECF No. 47 at 19.) The remainder of Petitioner's allegations as to the contents of the reports (Attachment, ECF No. 65-7 at 1-2) need not be addressed, because the allegations are in substance similar to those addressed here, and, for the same reasons, they would not entitle Petitioner to relief.

The claim is procedurally defaulted. In addition, as explained below, each of the allegations of prosecutorial misconduct is unsupported, and therefore the related ineffective assistance claim also fails. *See Tse*, 290 F.3d at 465.

### a. Allegation regarding custody

Petitioner alleges the investigator falsely stated in an investigative report that Petitioner had been told he was "free to leave" the workplace interviews with law enforcement. (Attachment, ECF No. 65-1 at 1.) Petitioner did not attach the investigative report that he alleges contains the false accusation. However, neither the complaint nor the prosecution version states that the investigator told Petitioner he was "free to leave;" rather, the documents reflect that law enforcement "informed [Petitioner] that he was not under arrest and had no obligation to answer questions. He said he understood and agreed to talk." (Complaint at 6; Prosecution Version at 2.)

To the extent Petitioner alleges prosecutorial misconduct for an allegedly false statement by the investigator, the claim is unsupported by the record on which the conviction is based, because the investigator's statement, as set forth in the prosecution version, did not include the allegedly false statement.[9]

### b. Allegation regarding drugging of the victims

Petitioner asserts that the investigator alleged that children appeared drugged in pornographic material, before the investigator knew which material Petitioner had produced, and

---

[9] Petitioner evidently also argues that because the investigator did not tell him he was "free to leave," he was in custody during the workplace interviews, and he was entitled to, but not provided, a *Miranda* warning. (Attachment, ECF No. 65-7 at 1.) *See Miranda v. Arizona*, 384 U.S. 436 (1966). Petitioner waived any *Miranda* claim when he pled guilty. *See United States v. Cordero*, 42 F.3d 697, 698-99 (1st Cir. 1994) (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). Although the First Circuit might permit claims of pre-plea ineffective assistance, *see United States v. Castro-Vazquez*, 802 F.3d 28, 33-34 (1st Cir. 2015), Petitioner cannot demonstrate prejudice for failure to file a motion to suppress, because the evidence obtained prior to and independent of Petitioner's statements was overwhelming. *See Strickland*, 466 U.S. at 697 (holding that the court need not address both prongs of the test for ineffective assistance when the claim fails under one prong); *United States v. Coker*, 433 F.3d 39, 47 (1st Cir. 2005) (noting that the Government must prove beyond a reasonable doubt that a constitutional error was harmless, but that in the case at hand, "even in the absence of the confession, the evidence . . . was so overwhelming that [the appellant] would have been convicted").

which material Petitioner had possessed but not produced. (Attachments, ECF Nos. 65-1 at 2; 65-7 at 1.)

The allegation is unsupported; the agent's allegations regarding the victims' mental and physical conditions, as determined through the investigation, relate to the victims of the sexual exploitation offenses, not the victims of the possession offense. (Complaint at 7, 9-10.) The affidavit that accompanies the complaint lacks any information to suggest the investigator's allegations relate to the possession offense. (*Id.*)

Furthermore, the presentence investigation report included Petitioner's denial that he drugged the victims of the sexual exploitation offenses. At sentencing, the Court noted Petitioner's denial. The Court, based on Petitioner's explanation as to why a third victim might have appeared drugged after he returned from an overnight camping trip with Petitioner, and based on the Court's review of the video of the victims Petitioner assaulted,[10] nevertheless found that Petitioner had drugged the victims of the sexual exploitation offenses. (Sentencing Tr. at 46-47.)

The record contains no basis for Petitioner's allegation that the agent's affidavit was flawed, no basis for his challenge to the Court's finding that Petitioner had drugged the victims, and no basis for any claim that counsel failed to assert that Petitioner denied he had drugged the victims of the sexual exploitation offenses.

---

[10] According to the presentence investigation report, charges were not filed against Petitioner with respect to the third victim, a boy whose father reported that the boy appeared to be drugged when he returned home after a camping trip with Petitioner.

### c. Allegation regarding Petitioner's sexual preference for certain prepubescent boys

Petitioner alleges that the investigator combined in a misleading way, statements Petitioner made about his sexual orientation when the agent asserted that Petitioner "stated he has a preference for chubby kids between 12 -14."  (Attachment, ECF No. 65-7 at 1.)

The presentence investigation report states: "The investigating agent was interviewed and stated the defendant reported that he preferred 'smooth chubby boys right prior to puberty.'"  The Court noted at sentencing that "the defendant, by his own statement, was attracted to prepubescent chubby boys."  (Sentencing Tr. at 47.)

Petitioner essentially contends that the investigator inaccurately combined Petitioner's statements to suggest that Petitioner reported that, as an adult, he had a sexual preference for young boys.  (Attachment, ECF No. 65-7 at 1.)  Petitioner contends that his prior statements to law enforcement actually related to his own experience as a child and early adolescent.  (*Id.*)

Petitioner's contention is not supported by the record of his own statements at sentencing. In response to the Court's inquiry at sentencing, Petitioner told the Court that he had received a copy of the presentence investigation report, that he read the report in its entirety, that he understood everything in the report, that he had had the opportunity to discuss the report with counsel, and that he understood the Court would rely on the report to determine the sentence. (Sentencing Tr. at 3-4.)  When the Court asked Petitioner whether there was anything he believed to be inaccurate about it, Petitioner said, "No sir."  (*Id.* at 4.)  *See United States v. Cortés-Medina*, 819 F.3d 566, 569-70 (1st Cir. 2016) (holding that a failure to object to a presentence report constitutes a waiver of any objection to material information contained in the report).  Petitioner has presented no record evidence to suggest the Court should not rely on his prior statement that the presentence investigation report was accurate.

### d. Allegation that Petitioner and another man sexually assaulted a boy

Petitioner alleges the investigator falsely stated that one of the videos depicted Petitioner and another man sexually assaulting a young boy. (Attachment, ECF No. 65-7 at 1.) Petitioner asserts that when he confronted the investigator, the investigator acknowledged that the statement was a mistake, but the investigator did not change his statement to correct it, and the statement was used by the Court at sentencing. (*Id.*) Petitioner also argues counsel's performance was deficient because counsel failed to contest the investigator's statement at sentencing. (*Id.*)

Petitioner's claim lacks merit. The agent alleged in the affidavit filed with the criminal complaint that one of the videos on an external hard drive showed another unknown adult male sexually assaulting a boy, and then, in a later segment, the video showed Petitioner assaulting the same boy. (Complaint at 10.) Even if the statement is deemed to be inaccurate because Petitioner and another adult male did not together assault a boy, Petitioner's claim fails because (1) Petitioner alleges in his section 2255 motion that the investigator acknowledged that he had made a mistake; (2) there is no mention in the presentence investigation report of evidence that Petitioner and another adult male together sexually assaulted a boy; and (3) at sentencing, the Court did not mention or rely on evidence that Petitioner and other adult male were each involved in a sexual assault of the same victim. Accordingly, the record lacks evidence of misconduct by law enforcement, deficient performance by counsel, or prejudice to Petitioner.

In sum, none of the four allegations of prosecutorial misconduct in the investigation has merit. Accordingly, the underlying prosecutorial misconduct claim and the related ineffective assistance claim both fail. *See Tse*, 290 F.3d at 465.

### 4. Claim that Petitioner did not knowingly and intelligently waive indictment or plead guilty

Petitioner alleges that he was mentally unstable, agitated, suicidal, and in crisis at the time of the waiver and guilty plea, and that counsel misled him and coerced him as to both the waiver and the plea. (Attachments, ECF Nos. 65-1 at 4; 65-5 at 1; 65-9.) Petitioner maintains that if he had known that the State was going to use statements by the federal investigator in the state prosecution, he would not have pled guilty. (Attachment, ECF No. 65-5 at 1.) Petitioner contends that neither the waiver of indictment nor the guilty plea was entered knowingly, intelligently, or voluntarily. (Attachment, ECF No. 65-9.) Petitioner also asserts a related claim of ineffective assistance based on counsel's failure to move to withdraw the guilty plea.[11] (Attachment, ECF No. 65-5 at 1.)

The claims of an involuntary waiver of indictment and involuntary plea are procedurally defaulted because Petitioner did not raise the issues on appeal. *See Cody v. United States*, 249 F.3d 47, 51-52 (1st Cir. 2001).

"Supreme Court precedent has long made clear that '[a] criminal defendant may not be tried unless he is competent, and he may not . . . plead guilty unless he does so "competently and intelligently."'" *United States v. Kenney*, 756 F.3d 36, 43 (1st Cir. 2014) (quoting *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (citation omitted) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 468 (1938))).

> To safeguard this constitutional guarantee, a court must, on either party's motion or *sua sponte,* order a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand

---

[11] Petitioner alleges that in June 2013, i.e., after he pled guilty but before the sentencing hearing, he asked the Court for permission to withdraw his guilty plea. (Attachment, ECF No. 65-5 at 1.) The Court's docket reflects that the Court received a letter from Petitioner dated June 14, 2013; the Court forwarded the letter to Petitioner's counsel, and it docketed the Court's letter to counsel, but the Court did not docket Petitioner's letter. (Letter, ECF No. 34.)

the nature and consequences of the proceedings against him or to assist properly in his defense."

*Kenney*, 756 F.3d at 43 (quoting 18 U.S.C. § 4241(a)); *United States v. Widi*, 684 F.3d 216, 219 (1st Cir. 2012) (noting that 18 U.S.C. §§ 4241(a)-(b), 4247(b)-(c) are the governing statutory procedures for determining whether a defendant is competent to plead guilty or go to trial).

> The First Circuit has set forth the legal standard for withdrawal of a guilty plea: Critical to the plea-withdrawal inquiry is whether the original guilty plea was knowing, intelligent, and voluntary. *See United States v. Aker,* 181 F.3d 167, 170 (1st Cir.1999) (citing Fed.R.Crim.P. 11). Other factors, however, may weigh in the balance. The court may consider, for example, "the plausibility and weight of the reason given for the withdrawal, the timing of the request, whether the defendant is now colorably asserting legal innocence, and whether the original plea was pursuant to a plea agreement." *Id.* If these factors, taken together, tilt in favor of allowing withdrawal, the court must then weigh the prejudice that the government would suffer if the plea were to be vacated.

*United States v. Caramadre*, 807 F.3d 359, 366 (1st Cir. 2015).

In *Cody*, the First Circuit held that to demonstrate his guilty plea was due to counsel's ineffective assistance, a petitioner "must prove by a preponderance of the evidence that his counsel unreasonably erred in permitting him to plead guilty, and that prejudice resulted." *Cody*, 249 F.3d at 52. The petitioner had argued essentially "that the trial court's Rule 11 inquiry was insufficient with respect to the effects of his medication on his competence to plead, and that his counsel erred by not stopping or correcting the proceeding accordingly." *Id.* The First Circuit held that the district court's inquiry, which included questions about whether the medication affected the defendant's ability to make reasoned decisions and assurances from the defendant that it did not, was sufficient, particularly in light of the Court's opportunity to observe the defendant's appearance and demeanor during the colloquy. *Id.* at 53 & n.5. The First Circuit concluded that there was no error in the Court's inquiry or in counsel's decision not to object to the proceedings. *Id.* at 52.

Notably, in a collateral challenge to the voluntariness of a waiver, "the judge has discretion to dismiss the petition without a hearing based on the judge's personal recollection that the waiver appeared knowing, intelligent and voluntary." *Dziurgot v. Luther*, 897 F.2d 1222, 1226 (1st Cir. 1990) (per curiam) (noting that where there is ample medical evidence in the record or "where the quality or duration of the district judge's relevant contact with petitioner lends special weight to the judge's recollection," a hearing on the voluntariness of a waiver of the right to be present at trial may not be necessary).

Petitioner's waiver of indictment and plea were conducted sequentially in a single hearing; the Court conducted its competency evaluation prior to its inquiry regarding the waiver of indictment. (Plea Tr. at 2-3.) The Court first explained to Petitioner that the Court would ask questions to ensure that Petitioner was competent. (*Id.* at 2.) In response to the Court's questions, Petitioner confirmed that he was taking Zoloft and Prilosec in prescribed doses, that no other medicine had been prescribed, and that other than the prescribed drugs, ibuprofen, and vitamins, Petitioner had not taken any medicine, nor had he consumed alcohol, in the 24 hours prior to the hearing. (*Id.* at 2-3.) The Court asked Petitioner whether he thought the Zoloft, Prilosec, or ibuprofen had had any effect on Petitioner's ability to understand the proceedings, and Petitioner responded, "No, sir." (*Id.* at 3.) The Court found Petitioner competent:

> The court having observed the defendant in making his answers and his demeanor and manner and attitude, and the court having observed the defendant does not appear to be under the influence of medicine, drugs, or any other substance that may affect his judgment, I find the defendant is competent.

(Plea Tr. at 3.)

Petitioner nevertheless alleges that he was unstable and "in crisis" at the time of the waiver of indictment and the plea. (Attachment, ECF No. 65-9.) Petitioner also contends that side effects

of Zoloft impaired his ability to think during the waiver of indictment and plea hearing.  (Reply at 2-3.)

Petitioner's claims of an involuntary waiver and involuntary plea fail because he alleges no facts that reasonably would have alerted either counsel, in advising Petitioner on the waiver or the plea, or the Court, in its evaluation of Petitioner's competence at the hearing, that Petitioner was unable to understand the proceedings or properly to assist in his defense.  *See* 18 U.S.C. § 4241(a); *Kenney*, 756 F.3d at 43; *United States v. Shiflett*, 258 F. App'x 560, 563 (4th Cir. 2007) (per curiam) (unpublished) ("When a defendant's answers raise a 'red flag' regarding his mental state, the court must expand its inquiry to ensure that the plea is being made knowingly and voluntarily.")  The Court asked specifically as to whether Petitioner's medicine had any effect on his ability to understand the proceedings.  (Plea Tr. at 2-3.)  Given Petitioner's responses to the Court's questions, and given that Petitioner's demeanor did not provide any reason for the Court or counsel to suspect any "red flags" regarding his mental state, Petitioner is not entitled to relief. *See Shiflett*, 258 F. App'x at 563.

Petitioner's argument that he was entitled to withdraw his guilty plea because the State used information from the federal investigation to pursue a state prosecution also lacks merit.  "If collateral review establishes that a plea was validly entered, nothing in the Self-Incrimination Clause prevents proof of the resulting conviction from being admitted into evidence at a subsequent trial that is a collateral consequence of the guilty plea."  *United States v. Bouthot*, 878 F.2d 1506, 1513 (1st Cir. 1989), *abrogated on other grounds by Perry v. New Hampshire*, 132 S. Ct. 716, 723, 728-30 (2012).

The First Circuit noted in *Bouthot* that "[a] different question would be presented if the state and federal prosecutors had acted in concert . . . ."  878 F.2d at 1512 n.4.  The First Circuit

subsequently explained that "since the federal and state courts are separate systems, '[a] state judge, even if she is aware of the federal implications of a state conviction, is not constitutionally required to warn a defendant about his federal exposure before accepting his guilty plea.'" *United States v. Campusano*, 947 F.2d 1, 5 (1st Cir. 1991) (quoting *Bouthot*, 878 F.2d at 1511) (holding that the appellant's lack of awareness that a state court guilty plea might be used against him in a subsequent federal prosecution did not render the state court guilty plea involuntary). Similarly, Petitioner's alleged lack of awareness of the state court implications of his federal conviction does not render the guilty plea on his federal charges involuntary.

In sum, Petitioner has not met any of the requirements for the withdrawal of his waiver and plea, even assuming he could prove that he asked counsel to move to withdraw the guilty plea. The waiver and guilty plea were made knowingly, intelligently, and voluntarily. In addition, Petitioner's stated reason for wanting to withdraw his waiver and plea, namely that he did not understand the proceeding, is contradicted by his own statements and demeanor at the hearing. Finally, any claim of legal innocence is meritless, given the facts and circumstances of the conviction.

Because Petitioner cannot demonstrate that he is entitled to withdraw his waiver of indictment or plea, his related claim of ineffective assistance also fails. *See Tse*, 290 F.3d at 465.

### 5. Claim that the sentence was based on an unreasonable determination of the facts

Petitioner contends that his sentence was based on an unreasonable determination of the facts. (Attachment, ECF No. 65-3 at 1.) Petitioner also argues that he did not plead guilty to the conduct on which the Court based the sentencing decision. (*Id.*; Attachment, ECF No. 65-8.)

Petitioner maintains that his sentence violates the Eighth Amendment.[12]  (Attachment, ECF No. 65-8.)

Petitioner in essence contends the Court gave insufficient weight to certain evidence. (Attachment, ECF No. 65-3 at 1.)  For example, he argues the Court's sentencing finding that he engaged in sadistic behavior is contravened by the testimony of the mother of one of the victims that the victim was "over it;" the Court rejected the argument.[13]  (*Id.*; Petitioner's Sentencing Memorandum at 5-6; Sentencing Tr. at 39.)  Petitioner also argues the Court did not give sufficient weight to his military service, his post-traumatic stress disorder, his lack of a criminal record, his cooperation with law enforcement, and the lack of statements from the victims that Petitioner sexually assaulted them.  (Attachment, ECF No. 65-3 at 1.)  Petitioner contends the Court should have reduced the sentence because he did not distribute the child pornography he produced.[14]  (*Id.*; Sentencing Tr. at 28-29.)

Petitioner also appears to contest some of the Court's findings of fact, including the findings that Petitioner drugged his victims, and that he used his martial arts business to lure victims.  (Attachment, ECF No. 65-5 at 1.)  He argues counsel was deficient due to the failure to contest the facts.  (*Id.* at 1-2.)  Contrary to Petitioner's contention, counsel argued that the record had not established that Petitioner drugged the victims.  (Sentencing Tr. at 30.)  Counsel also

---

[12] Petitioner's claim that his sentence violated his Eighth Amendment right against cruel and unusual punishment is precluded, because the First Circuit noted that it had conducted a thorough review of the record, and it concluded that the sentence was procedurally and substantively sound.  *United States v. Hoover*, No. 13-1886 (1st Cir. June 25, 2014). *See Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994).  Because Petitioner's underlying claim lacks merit, any related ineffective assistance claim also fails.  *See Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002).

[13] The Court applied U.S.S.G. § 2G2.2(b)(4), which provides for a four-level increase to the offense level "[i]f the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence."

[14] Petitioner also essentially argues that the sentence was unreasonable when he points out that he received the maximum sentence on each count, with the terms to be served consecutively.  (Attachment, ECF No. 65-3 at 1-2.) The issue was addressed on appeal, and therefore Petitioner is precluded from review in his section 2255 motion.  *See Singleton*, 26 F.3d at 240.

argued that the fact that Petitioner did not distribute the child pornography he produced should be considered as a mitigating factor. (*Id.* at 28-29.)

The record simply does not support Petitioner's contentions. When considering the sentencing factors, the Court took into account Petitioner's military service, including his honorable discharge; his post-traumatic stress disorder from tours of duty in Iraq and Afghanistan; his lack of prior criminal history; and his decision to admit guilt, which the Court noted spared the victims and their parents the pain of a trial. (*Id.* at 43, 48.) In short, the Court assessed the relevant facts, both favorable and unfavorable to Petition, when determining Petitioner's sentence.

*Strickland* applies to counsel's performance with respect to mitigation factors at sentencing. *Sears v. Upton*, 561 U.S. 945, 946 (2010) (per curiam). Petitioner's claim fails, however, because counsel at sentencing made most, if not all, of the arguments at issue; that the Court was unpersuaded does not render counsel's performance deficient. *See Strickland*, 466 U.S. at 699.

Petitioner's argument that he did not plead guilty to facts that authorized the Court to impose the statutory maximum sentence also fails. As part of the plea colloquy, counsel told the Court, in response to the Court's questions, that counsel was satisfied that the Government could prove beyond a reasonable doubt that Petitioner committed the crimes. (Plea Tr. at 18.) Petitioner told the Court that the prosecution version was true to his personal knowledge. (Plea Tr. at 19.) Based in part on Petitioner's and counsel's statements, the Court found a factual basis for the plea. (Plea Tr. at 19-20.) The Court did not impose a sentence that exceeded the maximum authorized by the facts established by the guilty plea.[15] *See United States v. Booker*, 543 U.S. 220, 244 (2005)

---

[15] Petitioner was fully informed of the maximum possible sentence for the conviction before he pled guilty; in the plea colloquy, in response to the Court's inquiry, Petitioner told the Court that counsel had informed him of the possible penalties under the statutes, and the Court itself explained the penalties to Petitioner. (Plea Tr., ECF No. 47 at 11-13.) As to the production count, the Court told Petitioner: "[Y]ou must be placed in jail for not less than 15 years, and you

("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.")

Because Petitioner's underlying arguments lack merit, any related ineffective assistance claim also fails. *See Tse*, 290 F.3d at 465.

### 6. Claim that the sentencing judge was biased

Petitioner contends that the Court engaged in homophobic bias because Petitioner is male and his victims were male children. (Attachments, ECF Nos. 65-8; 65-10.) Petitioner contends the Court shamed and belittled him, and this constituted evidence of bias. (Attachment, ECF No. 65-10.) The claim is procedurally defaulted because Petitioner did not raise it on appeal. Even if the claim was not procedurally defaulted, Petitioner's claim fails.

The First Circuit has noted that "a 'judge's participation [in a trial] must be balanced; he cannot become an advocate or otherwise use his judicial powers to advantage or disadvantage a party unfairly.'" *Owens*, 483 F.3d at 66 (quoting *Logue v. Dore,* 103 F.3d 1040, 1045 (1st Cir.1997)). Judicial remarks may support a claim of bias "if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). However, when a party "claims that the trial judge overstepped his bounds and displayed judicial bias to the extent that the trial was rendered fundamentally unfair, [he] must show that the

---

could be placed in jail for up to 30 years," . . . and "you could be on supervised release for the rest of your life." (*Id.*) The Court asked Petitioner if he understood that the Court had just explained to him the maximum and minimum penalties, and Petitioner replied: "Yes, sir." (*Id.* at 12.) As to the possession count, the Court explained that the penalties "can be in addition to the penalties" imposed on the production count. (*Id.* at 12-13.) The Court told Petitioner: "Turning to the possession count, you're subject to being placed in jail for a period not to exceed ten years," and "you may be on supervised release for the rest of your life." (*Id.* at 13.) The Court asked Petitioner: Do you understand that these are the maximum and minimum penalties that may be applicable to Count 2, the possession count?" Petitioner replied: "Yes, sir." (*Id.* at 14.)

judge's actions resulted in serious prejudice." *United States v. Ofray-Campos*, 534 F.3d 1, 33 (1st Cir. 2008) (quotation marks omitted). "The Supreme Court has taught that 'remarks during the course of trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases' are usually insufficient to prove bias." *Caramadre*, 807 F.3d at 375 (quoting *Liteky*, 510 U.S. at 555).

Petitioner has not cited any particular statement that he argues reflects bias; rather, he makes a general statement that the judge shamed and belittled him. (Attachment, ECF No. 65-10.) Petitioner asserts that the judge ignored his non-criminal past and his military background, and instead focused attention on the fact that the victims were male children. (*Id.*) Essentially, Petitioner argues that the sentencing ruling, combined with the fact that the judge referred to the victims as males, demonstrates that the ruling was the result of judicial bias based on Petitioner's sexual orientation. (*Id.*)

The fact that the judge referred to the victims as males does not demonstrate a sexual orientation bias against Petitioner. The judge's decision to impose the maximum sentence permitted was based on (1) the nature and circumstances of the sexual exploitation offenses, which included findings that Petitioner had drugged the victims, that the acts involved rape, sexual assault with objects, and filming of the crimes, and that Petitioner carefully and deliberately created the conditions that facilitated the offenses; and (2) the need to protect the public from Petitioner. (Sentencing Tr. at 43-50.) The Court's reasoning was supported by the record, and void of any suggestion of bias. Petitioner has failed to demonstrate judicial bias. *See Liteky*, 510 U.S. at 555; *Caramadre*, 807 F.3d at 375.

Because Petitioner's underlying claim of judicial bias fails, any related ineffective assistance claim Petitioner may have intended to assert also fails. *See Tse*, 290 F.3d at 465.

### 7. Claim regarding restitution

Petitioner argues the Court erred in finding that a victim of the possession crime met the requirement of causation; Petitioner also contends trial and appellate counsel failed to challenge the Court's imposition of restitution. (Attachments, ECF Nos. 65-1 at 6; 65-4; Sentencing Tr. at 50.) Counsel argued the issue of causation in chambers at sentencing, and the Court ruled on the issue in open court. (Sentencing Tr. at 9-12.)

A claim of ineffective assistance for the failure to challenge adequately restitution is not cognizable in a section 2255 motion. *See Smullen v. United States*, 94 F.3d 20, 25-26 (1st Cir. 1996) (holding that the Court lacked jurisdiction to grant relief on the petitioner's restitution claim, and a claim of ineffective assistance on the issue of restitution likewise fails).[16]

Had the ineffective assistance claim been cognizable on collateral review, it nevertheless would have failed on the merits, because the First Circuit decided against Petitioner on the underlying issue of the causation requirement in the restitution claim.[17] *See Tse*, 290 F.3d at 465.

### 8. Claim of cumulative error

Petitioner argues that if the Court does not find any of his individual claims persuasive, the Court should nevertheless grant relief because the cumulative effect of alleged errors rendered his conviction and sentence fundamentally unfair. (Attachment, ECF No. 65-11.)

---

[16] In *Smullen v. United States*, 94 F.3d 20, 26 n.8 (1st Cir. 1996), the First Circuit noted: "Should Smullen become incarcerated in the future due to his failure to meet the restitution order as the basis for his confinement obligations, he may, although we need not decide for present purposes, be entitled to bring a § 2255 action challenging his restitution at that point." Petitioner does not allege that his present incarceration is due to a failure to pay restitution, and therefore the issue is not raised here.

[17] The Court discussed *United States v. Kearney*, 672 F.3d 81 (1st Cir. 2012), in its ruling on restitution at Petitioner's July 2013 sentencing. (Sentencing Tr. at 10.) In its decision on Petitioner's appeal, the First Circuit cited *Paroline v. United States*, 134 S. Ct. 1710 (2014), which was decided after Petitioner's sentencing. *Hoover*, No. 13-1886 (June 25, 2014).

"'*Strickland* clearly allows the court to consider the cumulative effect of counsel's errors in determining whether a defendant was prejudiced.'" *Dugas v. Coplan*, 428 F.3d 317, 335 (1st Cir. 2005) (quoting *Kubat v. Thieret*, 867 F.2d 351, 370 (7th Cir. 1989) (citing *Strickland*, 466 U.S. at 694)).  In this case, however, because Petitioner's claim does not allege any specific facts independent of those alleged in his other claims, and because, as explained above, the other claims lack merit, there is no basis for Petitioner's claim that the cumulative effect of errors prejudiced him.  *See David*, 134 F.3d at 478; *Dugas*, 428 F.3d at 335.

## III.   CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases.  In addition, I recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255.  I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 21st day of December, 2016.